## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                              **CASE NO: 6:22-cr-95-PGB-DCI**

**JASON AARON BEATY**

_____/

### ORDER

This cause is before the Court on Defendant Beaty's Motion to Dismiss the Indictment. (Doc. 42). The Government filed a Response in Opposition, (Doc. 49), and the Defendant submitted a Reply. (Doc. 52).[1]

### I.      BACKGROUND

The Defendant stands before the Court charged with two firearm offenses. Count one of the indictment alleges the Defendant violated 18 U.S.C. §§ 922(g)(3) and 924(a)(2) by possessing a firearm knowing he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802. (Doc. 17). Count two alleges the Defendant knowingly possessed two silencers, as defined by 26 U.S.C. § 5845(a)(7), and a rifle with a barrel length of less than 16 inches, and that these firearms were not registered to him in the National Firearms Registration and

---

[1]    Rule 3.01(d) of the Middle District of Florida Local Rules provides that "[w]ithout leave, no party may file a reply directed to a response except a response to a motion for summary judgment." The Defendant did not seek leave to submit a reply, and thus the reply is not properly before the Court.

Transfer Record, as required by 26 U.S.C. § 5841, all in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. (*Id.*).

The Defendant argues 18 U.S.C. § 922(g)(3) is unconstitutionally vague and violates the Fifth Amendment guarantee of due process. For reasons discussed later on, the Defendant presents a facial challenge to the statute, as opposed to an as-applied challenge. (Doc. 42, p. 2). He also contends that opinions issued by the Eleventh Circuit Court of Appeals addressing the meaning of "unlawful user of a controlled substance" undermines the Constitution's separation of powers, since Congress and not the judicial branch is required define what conduct is sanctionable under the law. (*Id.* at 3). And the Defendant avers Section 922(g)(3)'s prohibition on firearm possession by unlawful users of controlled substances is not rooted in the Second Amendment's text and history and is, therefore, unconstitutional. (*Id.* at 6). Finally, the Defendant argues that Section 922(g)(3) is unconstitutional, because Congress exceeded its authority under the Commerce Clause. (*Id.* at 23).

As relates to Count Two, the Defendant argues Section 5861(d)'s prohibition on possession of unregistered firearms is not rooted in the Second Amendment's text and history and, therefore, is unconstitutional. (*Id.* at 11). And he advances a similar argument relating to possession of silencers. (*Id.* at 17). The Defendant also avers that taxation and registration of short-barreled rifles and silencers burdens rights protected by the Second Amendment and has no historical basis. (*Id.* at 19). The Court has considered and rejects each of these arguments.

## II.     18 U.S.C. § 922(g)(3)

It is settled law that the Second Amendment's right to keep and bear arms protects an individual's right to possess a firearm and that right is not contingent upon participation in a militia. *District of Columbia v. Heller*, 554 U.S. 570, 581, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). This right, however, is not without limitation. For example, the Second Amendment's protection does not extend to certain types of weapons, such as short-barreled shotguns. *Id.* at 622 (quoting *United States v. Miller*, 307 U.S. 174,178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939) ("In the absence of any evidence tending to show that possession or use of a [short-barreled shotgun] at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear *such an instrument*.) [Emphasis in original]. The Court in *Heller* held the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes ..." *Id.* at 625. And the Second Amendment's protection only extends to "law-abiding citizens." *Id.* at 626; *see also*, *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S.Ct. 2111, 2156 (2022) (limiting the guarantee to "ordinary law-abiding, adult citizens"). Therefore, Congress is free to regulate both the type of firearms one may lawfully possess and who may possess them. *Id.* at 626 ("nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill"). With this background, the Court turns to the Defendant's arguments in the order in which they are presented.

### A.    Fifth Amendment and Vagueness

#### 1.    *Facial Void–for–Vagueness*

The Defendant raises a facial challenge to Section 922(g)(3) and argues the statute's prohibition against possession of a firearm by one "who is an unlawful user of ... any controlled substance" violates the Fifth Amendment's Due Process protections. (Doc. 42, p. 3). The Government's Response does not squarely address whether Section 922(g)(3) is facially unconstitutional based on vagueness, and it makes only a fleeting and conclusory reference to the statute passing constitutional muster as applied to the facts of the case. (Doc. 49). The Government's analysis is limited to whether the regulation at hand imposes a burden on the right of armed self-defense and whether that burden is comparably justified by a well-established and representative historical analogue. (*Id.* at 2–9). While this analysis is important in reaching whether a regulation offends the Second Amendment, the facial challenge raised by the Defendant evokes a textual exegesis of the statute to determine if the law gives ordinary people fair notice of the conduct it punishes. *See Johnson v. United States*, 576 U.S. 591, 595, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).[2] The Government's failure to specifically address the Defendant's void-for-vagueness facial challenge, however, is not fatal because the Court is tasked with interpreting the language of the statute. Moreover, the scope of the rights

---

[2]    "The Fifth Amendment provides that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.' Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595. (citation omitted).

guaranteed by the Second Amendment is simply too important to decide by procedural default.

### a.   *Facial versus As-Applied*

Traditionally, one may not challenge a statute as vague on its face unless it implicates the First Amendment. *United States v. Marte*, 356 F.3d 1336, 1342 (11th Cir. 2004). An exception to this rule allows a facial challenge where the statute is so vague as to "proscribe no comprehensible course of conduct at all." *See United States v.* Reed, 114 F.3d 1067, 1070 (10th Cir. 1997). Otherwise, a vagueness challenge must be limited to the application of the statute to the conduct charged; that is, "as applied." *Marte,* 356 F.3d at 1342. While the Defendant submits Section 922(g)(3) is unconstitutionally vague both on its face and as applied, his argument is limited to a facial challenge. (Doc. 42, at 3). Even so, the Eleventh Circuit previously rejected an as applied vagueness challenge to Section 922(g)(3)'s prohibition against possession of a firearm by an "unlawful user" of a controlled substance where the defendant smoked crack cocaine in the weeks and days leading up to his arrest. *See United States v. Monroe*, 233 F. App'x 879, 881 (11th Cir. 2007).[3]

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.* 487 F.3d 1340, 1345 (11th Cir. 2007). Even so, this Court agrees with the Circuit's analysis in *Monroe* that ordinary people would understand that this conduct constitutes the unlawful use of a controlled substance. *Monroe*, 233 F. App'x at 881. At the hearing on Defendant Beaty's motion to suppress, Special Agent Allen testified the Defendant admitted to using  cocaine daily for 6-7 months prior to his arrest, and he admitted cocaine would be found inside his residence which proved to be true. (Govt. Ex. 10). As applied to Defendant Beaty under the facts of this case, Section 922(g)(3) is not vague.

Turning to the Defendants facial challenge, the Court notes the Defendant's brief does not elaborate the grounds for his facial challenge, aside from a passing reference to *Johnson*, (Doc. 42, p. 3, n.1). The Defendant did however adopt the reasoning of the District of Utah in *United States v. Morales-Lopez*, Case No. 2:20-cr-27-JNP, 2022 WL 2355920 (D. Utah June 30, 2022), and the Court will address the arguments advanced in that order. (Doc. 42, at 4).

In *Morales–Lopez,* the district court acknowledged that traditionally a facial attack, while rare, is permissible when the statute is "tainted by 'hopeless indeterminacy.'" *Id.* at *2, quoting *Johnson*, 576 U.S. at 598. The district court observed that "prior to *Johnson*, many courts had interpreted Supreme Court caselaw to hold that a criminal statute could only be declared unconstitutionally vague on its face if it was vague in all of its applications." *Id.* at *3. The *Morales-Lopez* Court reasoned that after *Johnson* a defendant is no longer required to show the statute is unconstitutional as applied to every possible set of facts to succeed on a facial vagueness challenge. *Id.* (citation omitted). Thus, the *Morales-Lopez* Court held the Supreme Court's decision in *Johnson* changed the framework for a facial vagueness challenge in non-First Amendment cases. If the *Morales-Lopez's* court's interpretation of *Johnson* is correct, this is a monumental change in how void-for-vagueness challenges are presented. *Id.* at *4.

According to *Morales-Lopez,* following *Johnson* a facially vague statutes is not saved simply because it is not vague as applied to a specific case. And yet, the Fourth, Seventh, and Eight Circuits declined to extend *Johnson's* reasoning

6

outside the context of the ACCA's residual clause and still require the movant to first show the statute is vague as applied to the facts of his or her case before mounting a facial challenge. *Id.* at *4, citing *United States v. Hasson*, 26 F.4th 610 (4th Cir. 2022); *United States v. Cook*, 970 F.3d 866, 872–78 (7th Cir. 2020); *United States v. Bramer*, 832 F.3d 908, 909–10 (8th Cir. 2016). The *Morales–Lopez* court rejected the reasoning of the Fourth, Seventh, and Eight Circuits, concluding that "[i]f a criminal defendant must bring a successful as-applied challenged to a statute before asserting a facial one, it is unclear how one could every bring a facial challenge. If a court finds the statute unconstitutional as applied to the defendant's facts, the facial vagueness challenge become moot." *Morales–Lopez*, 2022 WL 2355920, at *5. Similarly, "if the defendant is unsuccessful in showing the statute is unconstitutional as applied to him, then he cannot mount a facial challenge." *Id.* The *Morales-Lopez* court is correct in this analysis, but this has always been the case where First Amendment rights are not involved, and where the limited exception for a hopelessly indeterminate statute does not exist.

The question is whether *Johnson* changed the landscape for vagueness challenges or is limited to the ACCA's residual clause. This Court finds *Johnson's* holding that a defendant asserting facial vagueness challenge is not required to demonstrate the statute is vague as applied is limited to the ACCA's residual clause. *Johnson* is unique in that the ACCA's residual clause required trial courts to "picture the kind of conduct that the crime involves in the 'ordinary case,' and to

judge whether that abstraction presents a serious potential risk of physical injury." *Id.* at *3, citing *Johnson*, 576 U.S. at 596. The Supreme Court found the ACCA's residual clause's "indeterminacy" rendered it unconstitutionally vague.[4] *Id.*, citing *Johnson*, 576 U.S. at 597. The *Morales-Lopez* court further reasoned that the ACCA's residual clause is not saved simply because some hypothetical conduct falls within the provision's gap. *Id.*, citing *Johnson*, 576 U.S. at 602.

The Seventh Circuit distinguished *Johnson*, because the ACCA's residual clause requires district courts to engage in an after–the–fact judicial determinations that the prior offense conduct satisfies the residual clause and thereby fails to provide adequate notice of what is proscribed in violation of the Due Process Clause. *Id.*, citing *Cook*, 970 F.3d at 876. This Court agrees with the Fourth, Seventh, and Eight Circuits that the ACCA's residual clause is easily distinguished from Section 922(g)(3) and finds that *Johnson* does not excuse Defendant Beaty from demonstrating the statute is unconstitutionally vague as applied in his case.

This Court finds that as applied to Defendant Beaty's daily use of cocaine over the 6–7 months prior to his arrest, during which time he possessed firearms, his conduct meets the definition of an unlawful user of a controlled substance

---

[4] Facial void-for-vagueness challenges have traditionally been limited to abridgement of First Amendment Rights and those rare instances where the statute is "tainted by 'hopeless indeterminacy.'" The ACCA's residual clause falls into the latter category, allowing a facial challenge. Stated another way, because the residual clause is indeterminant, the Supreme Court did not provide for its salvation simply because a hypothetical crime clearly falls within its scope.

under Section 922(g)(3). The Court further finds the ordinary person would understand that the daily use of cocaine over an extended period — even where such use does not rise to the level of addiction — satisfies the meaning of unlawful user of a controlled substance. Because the statue is not vague as applied, the Defendant may not raise a facial challenge. That said, and to provide a complete record for appellate review, the Court will address whether Section 922(g)(3) survives a facial challenge.

### 2.    *The Facial Vagueness Analysis*

The Supreme Court instructs that in "any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376, 133 S.Ct. 1886, 185 L.Ed.2d 1003 (2013). Moreover, the Court presumes "that Congress legislates with knowledge of our basic rules of statutory construction." *McNary v. Haitian Refugee Center*, 498 U.S. 479, 469 (1991). Justice Scalia announced the Court's "regular method" of construing a statute is as follows:

> [F]irst, find the ordinary meaning of the language in its textual context; and second, using established canons of construction, ask whether there is any clear indication that some permissible meaning other than the ordinary one applies. If not—and especially if a good reason for the ordinary meaning appears plain—we apply that ordinary meaning.

*Chisom v. Roemer*, 501 U.S. 380, 404 (1991) (Scalia, J. dissenting). Regarding textual context, Justice Scalia teaches "the fundamental principle of statutory

construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). And a provision which may seem ambiguous in isolation is often clarified by consulting the remainder of the statutory scheme. *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371 (1988). Thus, judges should deviate from the plain language of the text only where the textual reading leads to an absurd result.[5]

Consistent with the teachings of the Supreme Court, the Eleventh Circuit Court of Appeals has repeatedly stated that:

> We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision.

*Durr v. Shinseki*, 638 F.3d 1342, 1348 (11th Cir. 2011) (citation omitted). Moreover, "[w]hen the import of words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Id.* In construing a statute, the court should not "look to one word or term in isolation, but instead . . . look to the entire statutory context." *Id.* at 1349 (citations omitted).

---

[5] For example, in *United States v. Howard*, 968 F.3d 717 (7th Cir. 2020), the Court construed the word "use" in connection with 18 U.S.C. § 2251(a), and held while the word "use" is "undoubtedly broad in the abstract . . . under the venerable doctrine of *noscitur a sociis*, a word 'is known by the company it keeps,' and we must 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id.* (citations omitted).

Against this framework, the Court must be mindful of the "rule of lenity" which requires that "before a man can be punished as a criminal . . . his case must be plainly and unmistakably within the provision of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917). Lenity principles "demand resolution of ambiguities in criminal statutes in favor of the defendant." *Hughey v. United States*, 495 U.S. 411, 422 (1990). *See also United States v. Granderson*, 511 U.S. 39, 54 (1994) ("In these circumstances—where text, structure, and [legislative] history fail to establish that the Government's position is unambiguously correct— we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor").

### a.    *"Unlawful User"*

Section 922(g)(3) provides as follows: "It shall be unlawful for any person ... who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802) ... to ... possess in or affecting commerce, any firearm..." 18 U.S.C. § 922(g)(3). The Court agrees with the district court in *Morales–Lopez* that "the legislature included two categories of individuals covered by the statute—unlawful users and addicts." *Morales–Lopez*, 2022 WL 2355920, at *8. There term "unlawful" is unambiguous, and the Defendant does not contend it contributes to the vagueness analysis. Rather, the Defendant, relying on the district court's analysis in *Morales–Lopez*, maintains that Section 922(g)(3) is unconstitutional, because the statute "fails to give notice of what temporal nexus, if any, is required between unlawful drug use and the

firearm possession." (Doc. 42 ,at 4); *see Morales–Lopez*, *supra*, at *8–9. The Defendant also claims "[i]t is unclear whether ... [unlawful user] refers to a person who uses drugs daily, weekly, monthly, annually, or a single time decades ago. *Id.* at 4–5.

The court in *Morales–Lopez* submitted that unlawful user is less than an addict, and held the statute "would make [illegal] gun possession at any point in a person's life after a single instance of ingesting drugs ... Therefore, the covered conduct falls somewhere in the chasm between a single use and an addict." *Morales–Lopez*, *supra*, at *8. The court in *Morales-Lopez* ruminates that "[t]he statute provides no further guidance for this court—nor for citizens attempting to understand the standards to which they will be held." *Id.* For example, "[b]ecause the term 'user' does not connote regular and ongoing use, it would be unclear to the ordinary person at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm." *Id.* at *9.

This Court declines to follow the interpretation of Section 922(g)(3) offered by the District of Utah. The *Morales-Lopez* Court "finds two possible meanings of unlawful user[:] ... (1) ongoing, frequent, habitual drug use, or (2) someone who is presently under the influence of drugs." *Morales-Lopez*, *supra*. at *8. The court then discards the first definition, because it describes one who is addicted to drugs.[6] *Id.* The *Morales-Lopez* court, however, does not expound upon its

---

[6] The Court in *Morales-Lopez* also rejects the second definition, "someone who is presently under the influence of drugs," because the Fourth Circuit has held Section 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled

justification for finding that "ongoing, frequent, [or] habitual drug use" is synonymous with "addicted to." Addiction is defined as "a compulsive, chronic, physiological, or psychological need for a habit-forming substance, behavior, or activity having harmful physical, psychological, or social effects and typically causing well-defined symptoms (such as anxiety, irritability, tremors, or nausea) upon withdrawal or abstinence." *Addiction*, MERRIAM-WEBSTER*, https://www.merriam-webster.com/ dictionary/addiction (last visited January 17, 2023). One may engage in "ongoing, frequent, [or] habitual drug use" without meeting the definition of addiction or addict. That is, one who unlawfully uses controlled substances on an ongoing, frequent, or habitual basis does not necessarily have a compulsive, chronic, physiological, or psychological need for the drug and may not suffer harmful consequences of his drug use. Accordingly, the type of evidence necessary to prove addiction is different from proof of ongoing, frequent, or habitual drug use. Contrary to the holding in *Morales-Lopez*, being an unlawful user of a controlled substance is not synonymous with being addicted.

The *Morales-Lopez* Court, having removed repetitive conduct from the definition of "user," concludes "'user' may refer to one who uses drugs annually, monthly, weekly, or daily, or to one who has ingested drugs only once." *Morales-Lopez*, 2022 WL 2355920, at *8. The district court then finds that "[b]ecause the term 'user' does not connote regular and ongoing use, it would be unclear to the

---

substance." *Morales-Lopez*, quoting *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002).

ordinary person at which point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm," rendering the statute impermissibly vague. *Id.*

The *Morales-Lopez* court's error is in reading "user" in isolation and failing to consider the remainder of the statutory scheme. Congress in crafting Section 922(g)(3) distinguishes between action which is ongoing or current and action which occurred in the past. For example, Section 922(g)(4) prohibits one "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possession a firearm.[7] The conduct falling within the scop of that provision occurred in the past. Therefore, Congress employs the past tense when it wants to regulate conduct occurring in the past. Likewise, Congress uses the present tense when regulating ongoing or current conduct. Section 922(g)(8) prohibits one "who is subject to a court order" that "restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner ..." from possessing a firearm.

In Section 922(g)(3), Congress chose not to employ the past tense "used" and instead employs the active "user," denoting ongoing unlawful use of a controlled substance. Even the term "addict" indicates an on-going addiction; otherwise, Congress would have prohibited those who have been "addicted" to

---

7   Similarly, in Section 922(g)(6), one "who has been discharged from the Armed Forces under dishonorable conditions" may not possess a firearm. And under Section 922(g)(7), one "who, having been a citizen of the United States, has renounced his citizenship" is prohibited from possessing a firearm.

controlled substances from possessing a firearm. The court in *Morales-Lopez* equates "unlawful user" with "one who unlawfully used," effectively rewriting the statute to create ambiguity where none exists. In *United States v. Wilson*, 979 F.3d 889, 916 (11th Cir. 2020), the Eleventh Circuit held "[a] conviction under § 922(g)(3) requires a showing that a defendant's use of a controlled substance is 'ongoing and contemporaneous with the commission of the offense.'" While the *Morales-Lopez* court would cast the holding in *Wilson* as a violation of separation– of–powers principles, the Court in *Wilson* is merely giving the plain and ordinary meaning to "unlawful user" and is not "filling a gap left by Congress' silence." *See Morales-Lopez, supra,* at *10 (quoting *Mobile Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)). For these reasons, this Court finds Section 922(g)(3) is not facially vague. It prohibits ongoing and contemporaneous unlawful use of a controlled substance and ongoing and contemporaneous addiction to drugs.

### 3.    *Whether Section 922(g)(3) is unconstitutional under Bruen*

This is little dispute that, no matter how unwise or unnecessary when considered in the context of a modern society benefitting from a professional military and police force, the Second Amendment protects an individual's right to keep and bear arms for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Even so the right secured by this Amendment is not without limitation. The right to keep and bear arms is vested in "ordinary, law-abiding citizen[s]." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct 2111, 2122 (2022) (quoting *McDonald v. Chicago*, 561 U.S. 742,

130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)). That said, regulations limiting the rights secured by the Second Amendment must be "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, *supra,* at 2126. "Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"[8] *Id.* (citation omitted).  If the "regulated conduct falls beyond the Amendment's original scope, 'then the analysis can stop there; the regulated activity is categorically unprotected. *Id.* Otherwise, the "government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

Against this background, the Defendant argues that even an unlawful user of controlled substances enjoys the right to keep and bear firearms for self-defense. (Doc. 42, p. 11). Next, the Defendant claims the prohibition on possession of unregistered firearms is not rooted in the Second Amendment's text and history, and he contends the National Firearms Act is unconstitutional. (*Id.* at 11–13). Finally, Defendant Beaty argues § 5861(d) is unconstitutional, because short-barreled firearms existed in the 18th century, (*Id.* at 14–16), and he claims

---

[8]   On July 12, 1816, in his letter to Samuel Kercheval, Thomas Jefferson warned us not to regard the Constitution as a sacred writ, stating: "Some men look at constitutions with sanctimonious reverence and deem them like the ark of the covenant, too sacred to be touched. They ascribe to the men of the preceding age a wisdom more than human, and suppose what they did to be beyond amendment." He advocated that laws "must go hand in hand with the progress of the human mind … and keep pace with the times." https://www.founders.archives.gov/?q=Ancestor%3ATSJN-03-10-02-012&&s=1511311111&r=2 (last visited Jan. 18, 2023). Herein lies the fallacy of originalism as a tool of judicial interpretation. Thomas Jefferson intended for a Living Constitution, and yet we continue to look back to the dustbin of history for guidance.

possession of silencers meets the common use test.[9] (*Id.* at 17–19). That is, he contends silencers are in common use today for self-defense, citing the significant number of silencers registered with the ATF. (*Id.* at 18).

The Government responds that Section 922(g)(3) does not run afoul of the Second Amendment, because the right to keep and bear arms only extends to "law-abiding, responsible" citizens keeping or bearing arms for "lawful purposes." *See Heller*, 554 U.S. at 635; *Bruen*, 142 S.Ct. at 2156. And the Supreme Court in *Heller* made clear that "nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626. Moreover, "the Second Amendment does not protect those weapons not *typically* possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625 [emphasis added].

For example, in *United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), the Supreme Court held the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." There is no logical distinction between short-barrel shotguns and the short-barrel rifles possessed by Defendant Beaty. And the Defendant's argument that "short-barrel firearms are well-suited to self-defense, in the home or in public" does not carry the day. (Doc. 42 at 15).  The issue is not

---

[9]   "[T]he Second Amendment protects the possession and use of weapons that are 'in common use at the time' for lawful purposes." *Heller*, 554 U.S. at 625, (citing *United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)).

whether a particular weapon is "well-suited" for self-defense. Rather, the Second Amendment protects only weapons *typically* possessed by law-abiding citizens for self-defense. The Supreme Court in *Miller* resolved any doubt that possession of short-barrel shotguns, and thus short-barrel rifles, does not fall within the scope of rights protected by the Second Amendment. *See United States v. Wilson*, 979 F.3d 889, 903 (11th Cir. 2020) (rejecting challenge to 26 U.S.C. §§ 5861(d) and 5871, prohibiting possession of unregistered saw-off shotgun, under *Miller*).

The Government also persuasively argues that "habitual lawbreakers" are excluded from "the people" covered by the Second Amendment. (Doc. 49, p. 4), *see United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (quoting Don B. Kates, Jr. *The Second Amendment: A Dialogue*, 49 LAW & CONTEMP. PROBS. 143, 146 (1986); *see also* THOMAS M. COOLEY, A TREATISE ON CONSTITUTIOINAL LIMITATIONS 40 (Boston, Little Brown & Co. 1890). An "unlawful user" of controlled substances, under Section 922(g)(3), is a person who is breaking the law and as to whom the Second Amendment's protections do not apply. For example, as the Government notes, in 1881 Florida passed an Act which prohibited the selling of firearms to persons of unsound mind. *See* 1881 Fla. Laws 87, An Act to Prevent the Selling, Hiring, Bartering, Lending, or Giving to minors under Sixteen Years of Age, or to any person of unsound mind, certain Firearms or other dangerous weapons. Therefore, this Court joins the Eight and Tenth Circuits, and numerous district courts, in holding that Section "922(g)(3) is the kind of 'longstanding prohibition[] on the possession of firearms' preserved in *Heller*."

*United State v. Seay*, 620 F.3d 919, 924–25 (8th Cir. 2010) (citations omitted). Accordingly, the Defendant's *Bruen* challenge to Section 922(g)(3) is denied.

As for silencers, the Government submits "[a] firearm silencer is not necessary to make a firearm operable; rather, it is exclusively a means to reduce sound omitted from an already operable firearm." (Doc. 49, p. 10). The Second Amendment applies to "bearable arms," including components necessary to render the weapon operable. *See Heller*, 554 U.S. at 582; *see also, United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')"). Simply put, a silencer is not a firearm, because it does not capable of expelling a projectile, and does not facilitate that purpose. *United States v. Hasson*, 2019 WL 4573424, at *3–5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022). While the Second Amendment extends "to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," a silencer is simply not a bearable arm. *Bruen*, 142 S.Ct. at 2126, 2131–32. And silencers do not "facilitate armed self-defense." *Id.* at 2132.

To bootstrap silencers to the notion of "bearable arms," the defense argues that because firearms are loud, silencers facilitate armed self-defense. (Doc. 42, at 17–18). The argument goes that because a person defending his or her home with a firearm equipped with a silencer need not "don earmuffs or earplugs" before shooting the notional assailant, silencers facilitate self-defense. (*Id.*). The hypothetical utility of a firearm silencer does not transform a silencer into a

bearable arm. By comparison a magazine facilitates self-defense because a firearm requires rounds. But the application of Second Amendment protections should not turn on the ability to conjure fanciful arguments on how firearm accessories facilitate armed self-defense. One could easily craft a counter-argument: silencers render weapons more unwieldy, more difficult to conceal, and minimize the noise which frightens and thus disorients the notional assailant. What's more, the mere fact that a great number of silencers are registered with the ATF does not mean they are employed for self-defense. And as the Government notes, even if a silencer qualifies as a firearm—which it doesn't—prohibitions against carrying dangerous and unusual weapons survive the Second Amendment, and a silencer is an unusual weapon. *Heller*, 554 U.S. at 627. But one need not engage in hypotheticals, because silencers are not bearable arms; they are accessories. Even if silencers fit the definition of bearable arms, they are not typically possessed by law-abiding citizens for self-defense. Accordingly, a firearm silencer does not fall within the scope of Second Amendment protection.

### 4. Taxation and Registration

The Defendant argues the National Firearms Act imposes unconstitutional burdens on the people, because it imposes "tax and registration and authorization requirements on the making, possession, and transfer of silencers." (Doc. 42, at 20). He contends this Nation's history and tradition of firearms regulation does

not include taxation, registration, and criminalization of failure to do so.[10] (*Id.* at 21). The Government correctly counters that the NFA's registration and taxation requirements, which apply to the silencer the Defendant possessed, do not infringe on the right to keep and bear arms. (Doc. 49, at 14). Unlike the law at issue in *Bruen,* the NFA does not require one to demonstrate "proper-cause" to carry a handgun for self-defense. *Bruen,* 142 S.Ct. at 2122. That is, taxation and registration does not infringe one's right to keep and bear arms. It is an administrative condition to lawful gun-ownership. Under the Defendant's reasoning, the state tax imposed on the sale of firearms violates the Second Amendment, since the "government" is regulating the sale, and therefore right to keep and bear arms. That would, of course, be a silly extension of the Second Amendment. The bottom line is the right to keep and bear arms is not without limitation. One must pay for the firearm, including a state sales tax, and registering a weapon under the NFA imposes no greater burden. The responsibilities attendant to firearm ownership do not infringe Second Amendment rights. *Bruen*, 142 S.Ct. 2138, n.9.[11]

---

[10] Nor did the Founding Fathers envision high-capacity magazines affixed to weapons whose destructive power dwarfs any small-arms available in Colonial America, weapons whose destructiveness is most often on display in public school shootings. But here we are suspending reality and pretending the right to keep and bear arms fashioned in the 18th Century envisioned the right to keep and bear arms intended for 21st Century military application.

[11] The Government's comprehensive analysis of Colonial laws regulating the firearms' trade is well taken. (Doc. 49, at 15–16). The NFA's record-keeping and attendant payment requirements are consistent with our Nation's historical regulation of firearms.

### 5.    *Commerce Clause*

The Defendant's last argument does not warrant serious consideration. Defendant Baety claims Section 922(g)(3) is unconstitutional facially and as applied, because the Commerce Clause does not extend to firearms. (Doc. 42, at 22–23). Section 922(g)(3) makes it unlawful for prohibited persons from possessing firearms "in or affecting commerce." This Circuit observed nearly 20 years ago that Congress did not exceed its authority under the Commerce Clause by enacting Section 922(g)(3). *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996). The Eleventh Circuit has squarely and repeatedly rejected these same arguments. *See, e.g*., *United States v. Scott*, 263 F.3d 1270, 1272–74 (11th Cir. 2001); *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011); *United States v. Williams*, 855 F. App'x 635, 636–37 (11th Cir. 2021). These opinions are grounded in the Supreme Court's holding in *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

## III.   CONCLUSION

For these reasons, the Defendant's Motion to Dismiss the Indictment (Doc. 42) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on January 20, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties